NOT FOR PUBLICATION                                                                (Doc. Nos. 21, 22)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| CANON FINANCIAL SERVICES, INC., | : : : : |
| Plaintiff, | : Civil No. 14-3829 (RBK/KMW) : |
| v. | : **OPINION** : |
| BRIAN J. BRAY et al, | : : |
| Defendants. | : : |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motions to Dismiss of Defendants Robert J. Bray, Jr. ("Robert"), Patricia Brennan ("Patricia"), and Delaware Valley Staffing & Services LLC ("DVSS") (Doc. No. 21), and Brian J. Bray ("Brian") (Doc. No. 22) (collectively "Defendants") Plaintiff Canon Financial Services, Inc.'s ("Plaintiff" or "CFS") Amended Complaint pursuant to Rule 12(b)(6), in which Plaintiff asserts claims including breach of fiduciary duty and breach of the duty of loyalty against Brian, aiding and abetting breach of fiduciary duty against Robert, Patricia, and DVSS, and unjust enrichment, fraud, and civil conspiracy against all Defendants. For the reasons stated herein, Defendants' Motions to Dismiss will be granted.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This matter arises out of the alleged misconduct of CFS's former employee, Brian, who used his position at CFS to route the hiring of temporary employees through a limited liability corporation set up by Robert and Patricia, with the purpose of creating profits for Brian, Robert, and Patricia, in violation of CFS's internal policies.

Plaintiff is a New Jersey corporation, and provides lease financing for the purchase of Canon and other office equipment from its headquarters in Mount Laurel, New Jersey. (Amended Complaint ("Compl.") ¶ 1.)  Brian, a citizen of Pennsylvania, was employed by CFS in New Jersey as its Director of Information Technology and served on the CFS Executive Committee from February 16, 2010, until February 8, 2012.  (Id. ¶ 2.)  Robert is the father of Brian, a citizen of Pennsylvania, an attorney licensed to practice law in Pennsylvania, and the Executive Vice President and General Counsel of IPR International LLC.  (Id. ¶ 3.)  DVSS is a limited liability corporation incorporated in Delaware, though it is a citizen of Pennsylvania, as its only two members, Robert and Patricia, are citizens of Pennsylvania.  (Id. ¶ 5.)  The address for DVSS in Pennsylvania is also the domicile of Defendants Robert and Patricia.  (Id.)  Patricia was the secretary of DVSS during the relevant period in the Amended Complaint.  (Id. ¶ 4.)

In the summer and fall of 2010, CFS prepared to enter into, and did enter into, multi-million dollar agreements for the creation of an Internet portal for dealers and customers (the "Project").  (Id. ¶ 8.)  Brian had management responsibility for the Project and for the addition of temporary information technology staff ("IT staff") for the Project.  (Id. ¶ 9.)

---

[1] On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true and construe the complaint in the light most favorable to the Plaintiff."  Accordingly, the following facts are taken from Plaintiff's Amended Complaint.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

CFS has and had at the time a "strict rule" that contracts with its vendors must be in writing. (Id. ¶ 13.) Brian, in his capacity as Director of Information Technology, was authorized to enter into written contracts with vendors, if the total value of a contract was less than $50,000. (Id. ¶ 14.) Contracts with a value of more than $50,000 required the approval of a supervisor with appropriate authority. (Id.)

Brian was also only authorized to enter into contracts with vendors consistent with CFS's Conflict of Interest Policy (the "Policy"). (Id.) The Policy, which Brian agreed to adhere to at the time he was hired, required each employee to avoid "any personal activities or interests which create, or might appear to others to create, a conflict with his/her duty of undivided loyalty to [CFS]." (Id. ¶ 16.) The Policy also provided in relevant part:

> 1. No employee should have any outside (that is, non-company) interest, direct or indirect, in any transaction or series of transactions to which [CFS] is a party if such interest might in any way influence the performance of his/her duties at [CFS], unless first approved in writing by a duly authorized officer of [CFS] after a full disclosure of all the facts. This rule has many specific applications. For example, an employee should not … (c) do business on behalf of [CFS] with family members or friends, unless such transactions are on an arm's length basis and reported to and approved in advance by the Corporate Compliance Office.
> …
> 4. Information obtained from company sources, but which is not generally available to the public, should not be used for personal financial gain or disclosed for other than company purposes.

(Id.) Brian also acknowledged and accepted CFS's updated Conflict of Interest Policy (the "Updated Policy") (collectively the "Policies"), which was published in CFS's Employee Handbook in early 2011. (Id. ¶ 17.) The Updated Policy reiterated in further detail that employees should avoid outside financial interests that might influence the decisions or actions of CFS, employees may not directly or indirectly benefit or seek to benefit from their position as an employee from any CFS activity, employees should contact CFS's Legal Division or

3

Corporate Compliance Office regarding any possible conflicts of interest, and employees should not engage in any outside employment that will have a negative impact on their performance. (Id.)

Contrary to the requirements of a having a written agreement and obtaining supervisory approval for a contract in excess of $50,000, Brian routed his hiring of temporary IT staff through DVSS without a written contract and without supervisory approval. (Id. ¶ 15.) CFS paid DVSS at total of $737,297 for four temporary IT staff members (Id. ¶ 22.) Additionally, Brian purportedly violated the Policies by routing his hiring of temporary IT staff through DVSS without first obtaining the written approval of an authorized officer of CFS after a full disclosure of all the facts. (Id. ¶ 19.)

Plaintiff believes Brian, Robert, and Patricia created DVSS in September 2010 for the sole purpose of profiting from Brian's responsibility to hire temporary IT staff for CFS. (Id. ¶ 10.) In September 2010 Brian allegedly agreed with Robert, Patricia, and DVSS to inflate CFS's cost of adding four temporary IT staff by routing the hiring through DVSS. (Id. ¶ 18.) By October 2010, Brian had hired the four IT staff members through DVSS, some or all of whom Plaintiff alleges Brian knew from his prior employment. (Id. ¶ 11.) CFS claims DVSS billed CFS "at a markup of about 60%." (Id.) Of the $737,297 paid by CFS for the four temporary IT staff members, Plaintiff alleges only $463,380 was paid to thee actual staff members, and $273,917 was "profit" for DVSS. (Id. ¶ 22.) It is Plaintiff's position that Brian hired these IT staff members using DVSS for the purpose of generating a markup for DVSS, rather than meeting the legitimate staffing needs of the Project. (Id. ¶ 12.) Purportedly Robert, Patricia, and DVSS retained the "profit" for themselves. (Id. ¶ 18.)

4

CFS also contends that Robert was aware of the Policies as a result of discussions between CFS and IPR International LLC, for which Robert served as general counsel. (Id. ¶ 20.) During those discussions, Robert was made aware that Brian was not permitted to participate in discussions between CFS and IPR International LLC because Robert was its general counsel. (Id.) Plaintiff also believes Patricia was aware that DVSS was created for the purpose of generating profits from Brian's ability to hire temporary IT staff for CFS, and that routing Brian's hiring through DVSS without proper disclosures and approvals would violate the Policies. (Id. ¶ 21.)

On February 8, 2012, CFS terminated Brian's employment. (Id. ¶ 2.) Plaintiff filed its initial Complaint in this Court on June 16, 2014 (Doc. No. 1), and on July 18, 2014, filed the Amended Complaint (Doc. No. 16). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. In the Amended Complaint, Plaintiff alleges that Brian breached his fiduciary duty (Count I) and breached his common law duty of loyalty (Count II), that Robert, Patricia, and DVSS aided and abetted Brian's breach of his fiduciary duty (Count VI), and all Defendants are liable for unjust enrichment (Count III), fraud (Count IV), and civil conspiracy (Count V). (See Compl.)

Defendants Robert, Patricia, and DVSS filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 21) on August 22, 2014, and Defendant Brian also filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. No. 22) that same day. Because the parties have fully briefed their positions, the Court will proceed to discuss the merits of Defendants arguments.

## II.  LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts

accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips, 515 F.3d at 233). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.

To make this determination, a court conducts a three-part analysis. Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Id. (quoting Iqbal, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Santiago, 629 F.3d at 131 (quoting Iqbal, 556 U.S. at 680). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common

6

sense." Iqbal, 556 U.S. at 679.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

### III. DISCUSSION

#### a. Counts I & II (Breach of Fiduciary Duty and Breach of the Duty of Loyalty)

In Count I of the Amended Complaint, CFS alleges that Brian breached his fiduciary duty to CFS.  (Compl. ¶ 26.)  In Count II, CFS alleges that Brian breached his duty of loyalty to CFS.  (Id. ¶ 34.)  In his Motion to Dismiss, Brian argues, inter alia, that Counts I and II should be dismissed because CFS did not properly allege damages.  The Court agrees.

In order to state a claim for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) a breach of the duty imposed by that relationship, and (3) harm to the plaintiff.  F.G. v. MacDonell, 150 N.J. 550, 561–64 (1997).

Similarly, to state a claim for breach of the duty of loyalty under New Jersey law, a plaintiff must allege (1) the existence of an employer-employee relationship, (2) breach of the duty of loyalty, and (3) resulting harm to the plaintiff.  See Cameco, Inc. v. Gedicke, 157 N.J. 504, 516–18 (1999) (a plaintiff-employer must show that an employee breached his duty of loyalty and that the employee's breach proximately caused the requested damages).

Both causes of action require a plaintiff to plead resulting "harm to the plaintiff." MacDonnell, 150 N.J. at 564; Cameco, 157 N.J. at 516–18.  CFS fails to do so.  First, CFS states that Brian was given responsibility to hire temporary IT staff for the Project.  (Compl. ¶¶ 8–9.) Allegedly, "[b]y October of 2010, Brian had hired four IT staff members, some or all of whom he knew from his prior employment, utilizing [DVSS] to bill CFS at a markup of about 60%." (Id. ¶ 11.)  Brian routed this hiring through DVSS, without CFS's prior written approval, and in violation of CFS's Conflict of Interest Policy.  (Id. ¶¶ 15, 19.)  On information and belief, CFS

7

avers Brian hired the IT staff workers through DVSS "for the purpose of generating a [DVSS] markup rather than to meet the legitimate staffing needs of the Project." (Id. ¶ 12.) As a result, CFS claims that it paid DVSS a total of $737, 297, but only $463,380 was paid by DVSS to the four temporary IT employees whom Brian hired, leaving $273,917 in "profit" for DVSS. (Id. ¶¶ 18, 22.) Finally, CFS alleges it incurred damages in excess of $75,000 as a result of Brian's breach of fiduciary duty, (id. ¶ 27), and as a result of Brian's breach of his common law duty of loyalty. (Id. ¶ 35.)

Nowhere in the Amended Complaint does CFS detail how Brian's conduct actually caused CFS harm. Brian was tasked with, and apparently succeeded in, hiring temporary IT employees for the Project. CFS alleges he hired people that he knew from previous employment through DVSS, and that he did this to generate a DVSS markup, rather than to meet the legitimate staffing needs of the Project. (Id. ¶ 12.) Yet, the Amended Complaint does not provide any facts to support this conclusory statement. The Amended Complaint makes no allegations that Brian hired too many employees for the Project, that the employees were never provided, that the employees performed at a subpar level, that Brian was not supposed to use a staffing service, that DVSS's markup was unreasonable amongst staffing services, or anything of that nature. And while it is true that in a duty of loyalty case, the harm suffered may include profits, where an employee "usurped a corporate opportunity or secretly profited from a competitive activity," Cameco, 157 N.J. at 518, the Amended Complaint does not even contain factual allegation suggesting Brian secretly profited or stole an opportunity from CFS.

It is telling that CFS's brief in opposition to Defendants' Motions to Dismiss attempts to add facts to the Amended Complaint such as, "[Brian] could have and should have, consistent with his fiduciary duties and duty of loyalty to CFS, hired the four temporary workers directly on

8

CFS's behalf … [because] that is what CFS paid him … to do." (Pl.'s Opp'n at 11.)  Plaintiff also attempts to add that "[DVSS] is alleged to have provided no legitimate service at all, as the man behind the curtain was [Brian]."  (Id. at 12.)  Finally, CFS states in its brief that "CFS absolutely would not have paid DVSS anything … had it known that it was in reality paying [Brian, Robert, and Patricia] for sham staffing services," and that the $273,917 DVSS received in "profit" was a loss directly resulting from [Brian's] misconduct."  (Id.)  CFS's brief in opposition does not cite any paragraphs of the Amended Complaint for these contentions, because they simply are not alleged therein.[2]

Finally, CFS's allegation that it suffered damages in excess of $75,000 is similarly conclusory and unsupported by any alleged facts.  A plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action…" to survive a motion to dismiss.  Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79.  As discussed supra, CFS fails to allege any harm that resulted from Brian's behavior to substantiate the conclusion that it suffered $75,000, or more, in damages.

Because Plaintiff's Amended Complaint fails to allege what harm it actually suffered by Defendants' actions, Counts I and II of the Amended Complaint are dismissed without prejudice.

    b. **Count IV (Fraud)**

In Count IV of the Amended Complaint, Plaintiff alleges that Defendants committed fraud when they made "material misrepresentations to CFS by concealing that DVSS was created by Brian, Robert, and Patricia for the sole purpose of profiting from [Brian's] breaches of

---

[2] The Third Circuit has held that "[it] is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. Of Pa. ex rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1984).

fiduciary duty and duty of loyalty, fraud, civil conspiracy and violations of dollar amount and conflict of interest restrictions on the authority of [Brian]." (Compl. ¶ 42.)

To state a claim for common law fraud in New Jersey, a plaintiff must allege the defendant (1) made a representation or omission of a material fact; (2) with knowledge of its falsity; (3) intending that the representation or omission be relied upon; (4) which resulted in reasonable reliance; and that (5) plaintiff suffered damages. Jewish Ctr. of Sussex Cnty. v. Whale, 86 N.J. 619, 624 (1981).

As with Counts I and II, Count IV's claim for common law fraud requires CFS to plead damages in order to state a claim. Jewish Ctr. of Sussex Cnty., 86 N.J. at 624. CFS has failed to do so for the reasons set forth, supra, in Part III.a of this Opinion. Count IV does not set forth any new allegations of damages. Rather, it recites the same boilerplate language found in Counts I and II that Defendants behavior resulted in "damages to CFS in excess of $75,000." (Compl. ¶ 44.) As stated supra, this language is insufficient to adequately plead damages. Twombly, 550 U.S. at 555; see also Iqbal, 556 U.S. at 678-79. Accordingly, Count IV of the Amended Complaint against Defendants is dismissed without prejudice.

    **c. Count III (Unjust Enrichment)**

In Count III Plaintiff alleges that Defendants were unjustly enriched by their own actions. "To establish unjust enrichment, a plaintiff must show both that the defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Further, a plaintiff must show that "it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id.

Plaintiff has failed to plead a cause of action for unjust enrichment. It alleges that Brian was responsible for hiring four, temporary IT staff. (Compl. ¶ 9.) Plaintiff also states that Brian did hire four IT workers, some or all of whom he knew from his prior employment, through DVSS at a "markup of about 60%." (Id. ¶ 11.) Finally, CFS contends that it paid DVSS $737,297, but only $463,380 was paid by DVSS to the four temporary IT employees whom Brian hired, leaving $273,917 in "profit" for DVSS. (Id. ¶ 18, 22.) Nowhere in the Amended Complaint is it alleged that Defendants were enriched beyond their contractual rights.

Though CFS asks the Court to read paragraphs 8, 9, 11, and 22 of its Complaint to allege that when "CFS paid DVSS—that is, Brian Bray, Robert Bray, and Patricia Brennan—hundreds of thousands of dollars in profit, it believed and expected that it was receiving legitimate staffing services for an ongoing multi-million dollar project, though in reality it was receiving no service at all," (Pl.'s Opp'n 20) (internal citations omitted), the Court cannot do so. The allegations that: (1) Brian was tasked with the hiring temporary IT staff for a multi-million dollar project, (Compl. ¶¶ 8–9), (2) Brian "hired four information technology staff members, some or all of whom he knew from prior employment, utilizing [DVSS] to bill CFS at a markup of about 60%," (Id. ¶ 11), and (3) DVSS received $273,917 in "profit," (id. ¶ 22), do not comport with CFS's contention in its brief that "CFS was receiving no service at all." (Pl.'s Opp'n at 20.) Rather, CFS's claim for unjust enrichment appears to allege that Brian violated CFS's conflict of interest policy when he contracted with DVSS, Robert, and Patricia to provide temporary IT workers. Such allegations are inadequate to state a claim to relief for unjust enrichment.

Therefore, Count III of the Amended Complaint for unjust enrichment is dismissed without prejudice.

    d. **Count V (Civil Conspiracy)**

In Count V of the Amended Complaint, CFS alleges that Defendants engaged in a civil conspiracy when they "agreed and acted in concert to profit from [Brian's] breaches of fiduciary duty and duty of loyalty, fraud, and violations of dollar amount and conflict of interest restrictions on the authority of [Brian]." (Compl. ¶ 48.)

To state a claim for civil conspiracy under New Jersey law, a plaintiff must provide facts which allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Morgan v. Union Cnty. Bd. of Chosen Freeholders, 268 N.J. 337, 364 (App. Div. 1993)). The touchstone of a civil conspiracy claim "is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." Banco, 184 N.J. at 177–78 (quoting Morgan, 268 N.J. at 364 (internal quotations omitted)). Thus, under New Jersey law, a plaintiff "cannot bring an action alleging civil conspiracy unless defendants committed an act that would be actionable even without the conspiracy." Eli Lilly and Co. v. Roussel Corp., 23 F. Supp. 2d 460, 497 (D.N.J. 1998) (citing Middlesex Concrete Prods. & Excavating Corp. v. Carteret Indus. Ass'n, 37 N.J. 507, 517 (1962)).

As discussed supra, in Part III.a–b of this Opinion, CFS has failed to state a claim against Brian for breach of fiduciary duty and breach of the duty of loyalty, and has failed to state a claim against Defendants for fraud. Since a conspiracy is not actionable absent an independent wrong, the dismissal of CFS's other claims requires the dismissal of the conspiracy claim. See Eli Lilly and Co., 23 F. Supp. 2d at 497 (citing Tynan v. General Motors Corp., 248 N.J. Super

654, 668–69 (App. Div. 1999), rev'd in part on other grounds, 127 N.J. 269 (1992)).

Accordingly, Count V is dismissed without prejudice.

### e. Count VI (Aiding and Abetting Breach of Fiduciary Duty)

In Count VI of the Amended Complaint, CFS alleges Robert, Patricia, and DVSS aided and abetted Brian's Breach of Fiduciary Duty. (Compl. ¶¶ 55–56.)

To state a claim for aiding and abetting in New Jersey, a plaintiff must allege "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing participation in that breach by the defendants who are not fiduciaries." Scheidt v. DRS Techs., Inc., 424 N.J. Super 188, 209 (App. Div. 2012) (quoting Weinberger v. Rio Grande Indus., Inc., 519 A.2d 116, 131 (Del. Ch. 1986)).

As discussed supra, in Part III.a of this Opinion, CFS failed to state a claim against Brian for breach of his fiduciary duty, resulting in the dismissal of that claim. Robert, Patricia, and DVSS cannot be held liable for aiding and abetting a non-existent breach of fiduciary duty. See Swift v. Pandey, No. 13–650, 2013 WL 6054853 at *8–10 (D.N.J. Nov. 13, 2013) (dismissing all breach of fiduciary duty claims, including aiding and abetting, where Plaintiff failed to state a claim for breach of fiduciary duty that was plausible on its face). Therefore, Count VI is dismissed without prejudice

### IV.   LEAVE TO AMEND

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)). Indeed, even when "a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time,

unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Because the Court finds that Plaintiff may be able to cure the pleading deficiencies identified above such that amendment would not be futile, the Court will grant Plaintiff the opportunity to seek leave to amend her Amended Complaint within fourteen days of the date of this Opinion and accompanying Order.[3]

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss will be **GRANTED**. An appropriate order shall enter today. Plaintiff shall have **fourteen (14) days** from the date of this Opinion and accompanying Order to file a motion seeking leave to amend her Amended Complaint

Dated:   2/25/2015                                                              s/ Robert B. Kugler
                                                                                                  ROBERT B. KUGLER
                                                                                                  United States District Judge

---

[3] If Plaintiff files a Motion for Leave to Amend the Amended Complaint, it shall attach to the Motion a copy of the proposed Second Amended Complaint, as required by Loc. Civ. R. 7.1(f).